**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No. 8:03-CR-77-T-30TBM**

**HATEM NAJI FARIZ**
________________________________/

**MOTION TO PRESERVE TESTIMONY BY WAY OF FOREIGN DEPOSITION AND FOR PAYMENT OF EXPENSES UNREDACTED VERSION**

Defendant, Hatem Naji Fariz, by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 15, respectfully requests that the Court order the taking of foreign depositions. As grounds in support, Mr. Fariz states:

Trial in this case is currently set for April 4, 2005. As part of his investigation in this case, the undersigned has located and contacted several individuals whose testimony is material and necessary to Mr. Fariz. These individuals are Naim Nasser Bulbol, Salaheddine Abu Hassanein, Wail Ashor, Ali Samoudi, Suha Affuni, Ali Jarbawi, Khalil Shikaki, and Abd Al-Fattah Zahalqa. Each of these witnesses reside in the Occupied Territories of the West Bank and Gaza Strip or Israel and are not subject to subpoena.[1] The above named individuals are willing to testify on behalf of Mr. Fariz, but are not available or willing to testify in person in the United States. Even were they willing to come to the United States,

---

[1]*See United States v. Samaniego*, 345 F.3d 1280, 1283 (11th Cir. 2003), quoting *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993) ("'foreign nationals located outside the United States . . .are beyond the subpoena power of the district court'").

they are prevented by the Israeli authorities from applying for a visa at a United States consulate within Israel or East Jerusalem, due to the severe restrictions on movement in place for residents of the Occupied Territories. Further, the sole crossing point in the Gaza Strip open to Palestinians, which is located in Rafah, is frequently closed by the Israeli military, which arbitrarily shuts down the border crossing for lengthy periods of time at will.

**Naim Nasser Bulbol**

Naim Nasser Bulbol, who was identified in the original Indictment as unindicted co-conspirator number 11 (as "Sheik Abu Naser"), is a resident of Rafah, the Gaza Strip who works as a teacher in a school run by the Palestinian Authority. He will testify that he met Mr. Fariz in Chicago in the mid-1990s when he served briefly as an imam (religious leader and scholar) at a Chicago-area mosque. He has maintained a long-term relationship as a friend and religious adviser to Mr. Fariz, even after returning to the Gaza Strip. He introduced Mr. Fariz to Saleheddine Abu Hassanein via telephone, in response to Mr. Fariz's desire to help out fellow Palestinians in need, in order to allow Mr. Fariz to meet his religious obligations under Islam to the less fortunate. He will further testify that he has no ties whatsoever to the PIJ, and that his involvement with Mr. Abu Hassanein is entirely charitable in nature and has no relation to any political group.

**Saleheddine Abu Hassanein**

Saleheddine Abu Hassanein, who is active in charitable work in Rafah, the Gaza Strip, will testify that he met Mr. Fariz through Naim Nasser Bulbol, who introduced the two via telephone. He and Mr. Fariz have never met in person. While Mr. Abu

Hassanein, who is also referred to in the Superseding Indictment as Abu Ahmad, was previously convicted and imprisoned by an Israeli military court essentially on the grounds that he was active in the Palestinian Islamic Jihad (PIJ), he will testify that his work in Rafah with Elehssan Charitable Association is entirely humanitarian in nature and has no relation to either political or military activities of the PIJ. He will further testify that all the funds sent to him by Mr. Fariz went to families in severe need due to dire poverty and for entirely humanitarian purposes.

**Wail Ashor**

Wail Ashor is a resident of Gaza City and obtained Mr. Fariz's telephone number via a relative of Mr. Fariz. Several of his calls with Mr. Fariz were intercepted and identified in the government's summaries of its FISA wiretaps. He will testify that he had heard from Mr. Fariz's relative that Mr. Fariz was willing and able to help Palestinians in need, and asked for help in meeting the college tuition obligations of his brother Raed, since Raed was not a member of any political group and was therefore not eligible for an education stipend. He will further testify that his brother was not affiliated with any political group in Palestine, and that Mr. Fariz sent him a donation to help his brother meet his tuition payments.

**Ali Samoudi**

Ali Samoudi is a resident of Jenin, the West Bank, where he works as a reporter with Reuters, Al-Jazeera television, and Al-Quds newspaper, among others. He will testify that Mr. Fariz contacted him sometime in 2001 and asked him to serve as a correspondent for an Arabic-language radio program that Mr. Fariz and Ghassan Ballut hosted on a Chicago-area

radio station. He will further testify that as payment for his services, Mr. Fariz wire transferred him money on a handful of occasions. The government includes these transactions in the Superseding Indictment as Overt Acts 283 and 285. He will testify that none of the money transferred to him by Mr. Fariz went to Hamza Samoudi, the individual who carried out a bus bombing in Haifa, Israel on June 5, 2002 (Overt Act 290), or was used to fund any other violent activity.

**Suha Affuni**

Suha Affuni is a resident of Ramallah, the West Bank, where she works as the director of the National School for Blind Girls, the only such educational institution that serves the needs of blind schoolgirls in the West Bank. She will testify that her school received contributions from the defendants in the United States, whether individually or through organizations, such as the Muslim Women's Society. She will further testify that all of the funds sent to her school, which is not affiliated with any political party or organization, went to the purpose of educating its students, financing the school's operations, and providing for the needs of its students and staff.

**Ali Jarbawi**

Ali Jarbawi is a resident of Ramallah and a professor of political science at Bir Zeit University in the West Bank. He is a internationally known and respected commentator on Palestinian politics and most recently served as the Secretary General for the independent Palestinian Central Elections Commission, which oversaw the January 9, 2005 elections for the post of President of the Palestinian Authority. He is a well-known scholar and has no

affiliations with any political groups. He will testify that he knew Sameeh Hammoudeh, an alleged co-conspirator, as a student in his department at Bir Zeit, where he came to be familiar with Mr. Hammoudeh's scholarly work and activities. He will further testify that Mr. Hammoudeh was not affiliated in any way with the PIJ while a student at Bir Zeit, where all student members of the various Palestinian parties are well-known to all. He will also testify that while at Bir Zeit, Mr. Hammoudeh had a reputation as a calming influence who would frequently intervene to moderate in disputes between all political and religious groups present at the university.

**Khalil Shikaki**

Khalil Shikaki is a resident of Ramallah in the West Bank, where he serves as the Director of the Palestinian Center for Policy and Survey Research. He is an internationally known and respected commentator on Palestinian politics and frequently conducts wide-ranging surveys of public opinion in the West Bank and Gaza Strip. He also enjoys a very favorable reputation among American government officials and policy makers as a reliable analyst of developments in the Palestinian political arena. Despite the fact that he is the brother of the late Fathi Shikaki, the former Secretary General of the PIJ, he has never been affiliated with the PIJ, and has very consciously developed a reputation as a Palestinian moderate with ties to academics and policy-makers in both Israel and the United States. He will testify that he served as an advisor to Sameeh Hammoudeh while he was a professor at Al-Najah University in Nablus, the West Bank. He will further testify that he encouraged Mr. Hammoudeh to come to the United States to pursue an advanced degree at the University

of South Florida, where he served as a visiting professor from 1991 and 1992. While he was affiliated with the World and Islamic Studies Enterprise, none of the work he did there had any connection to the PIJ. He will also testify that he donated to the same type of charitable activities through the Muslim Women's Society that Mr. Hammoudeh did, and that none of the funds in any way went to terrorist groups or to finance acts of violence.

**Abd Al-Fattah Zahalqa**

Abd Al-Fattah Zahalqa is an Israeli citizen resident in the town of Kufr Qara, Israel, where he operates a book store. He will testify that he was introduced to Mr. Fariz through Sameeh Hammoudeh, whom he had met in Ramallah prior to Mr. Hammoudeh's leaving for the United States. He will testify that during Mr. Hammoudeh's period of residence in the United States he periodically received orders for Arabic-language books from Mr. Hammoudeh. Mr. Zahalqa would occasionally travel to the United States to visit his brother, who lived in Florida at the time, and during those visits, would see Mr. Hammoudeh. Eventually Mr. Hammoudeh introduced him to Mr. Fariz. Mr. Zahalqa will testify that Mr. Fariz, sometimes on his own and sometimes in tandem with Mr. Hammoudeh, would order books from his bookstore in Kufr Qara to be shipped to the United States, where Mr. Fariz and/or Mr. Hammoudeh would attempt to resell them to members of the Arab community here. He will further testify that he has no ties to any political groups, and that the nature of his dealings with Mr. Fariz and Mr. Hammoudeh was personal and/or entirely within the realm of legitimate business dealings.

**Memorandum of Law**

In a criminal case, the Court may order the taking of a foreign deposition, "[w]henever due to exceptional circumstances of the case it is in the interest of justice," to do so. Fed. R. Crim. P. 15(a)(1). The proponent of the deposition bears the burden of establishing "exceptional circumstances." *Drogoul*, 1 F.3d at 1552. In *Drogoul*, the Eleventh Circuit fashioned a three-part test to determine whether "exceptional circumstances" exist. First, the witness must be unavailable to testify at trial. Second, the absence of testimony material to the movant's case would result in injustice. Third, whether there are countervailing factors render taking the deposition unjust to the nonmoving party. *Id.*; *see also United States v. Ramos*, 45 F.3d 1519 (11th Cir. 1995) (following the reasoning of *Drogoul*). "When a prospective witness is unlikely to appear at trial and his testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony. . . ." *Drogoul*, 1 F.3d at 1552.

Unavailability need not be established conclusively, but need only be probable. *Id.* at 1553. In the instant case, all the prospective witnesses have stated that they are unwilling and unable to appear at trial. Moreover, they are foreign nationals residing outside the United States in militarily occupied territory and, as such, have extremely limited ability to travel abroad. It is clearly probable that they will be unavailable for trial.

The prospective witnesses' testimony also qualifies as material evidence, the absence of which would cause an injustice at trial. As stated above, the proposed testimony of all the

prospective witnesses will directly rebut the government's contentions that Mr. Fariz was active on behalf of or provided material support to PIJ. An injustice will result if the jury cannot hear the proposed testimony.

Finally, there are no countervailing factors that would make taking this deposition unjust to the government. The Eleventh Circuit has found "neither the possibility of inaccurate translations," nor a party's inability to confront witnesses called only by deposition to be an unjust countervailing factor to the taking of foreign depositions. *Ramos*, 45 F.3d at 1523-24 (citing *Drogoul*, 1 F.3d at 1554-56). Nor is delay an issue here. Mr. Fariz is moving adequately in advance of the April 4, 2005 trial date to request the taking of the foreign depositions; as soon as the undersigned was able to locate and contact the prospective witnesses, this request was made. While the prospective witnesses are located in areas currently under military occupation and the site of considerable unrest, the United States has governmental officials who could attend such foreign depositions. *Id.* If deposing such witnesses in person proves too logistically difficult, the Eleventh Circuit has upheld the validity of preserving testimony via other measures, such as written interrogatories. *Id.* at 1524.[2]

With regard to the payment of costs, Fed.R.Crim.P. 15(d) provides:

[2]Since Mr. Fariz is mindful of the extremely volatile political conditions in the Middle East, he is also open to the possibility of conducting the proposed depositions from Tampa via alternative methods, such as, for example, a satellite link, depending on the viability and availability of such methods.

> If the deposition was requested by the government, the court may - or if the defendant is unable to bear the deposition expenses, the court must - order the government to pay:
>
> (1) any reasonable travel and subsistence expenses of the defendant and defendant's attorney to attend the deposition; and
>
> (2) the costs of the deposition transcript.

Fed. R. Crim. P. 15(d).

Where, as here, the defendant has been found to be indigent, an order requiring the government to pay the costs and expenses related to the depositions is mandatory. *See* Rule 15, Advisory Committee Notes, 2002 Amendments (setting forth that the Rule, as amended, mandates that "[i]f the defendant is unable to pay the deposition expenses, the court *must* order the government to pay reasonable subsistence and travel expenses and the deposition transcript costs - regardless of who requested the deposition") (emphasis in original).

WHEREFORE, Defendant Hatem Naji Fariz respectfully requests that the Court order the taking of the foreign depositions of Naim Nasser Bulbol, Salaheddine Abu Hassanein, Wail Ashor, Ali Samoudi, Suha Affuni, Ali Jarbawi, Khalil Shikaki, and Abd Al-Fattah Zahalqa as soon as practicable, and that the government be required to bear all related costs and expenses.

Respectfully submitted,

R. FLETCHER PEACOCK
FEDERAL PUBLIC DEFENDER

/s/ *Wadie E. Said*

Wadie E. Said
Assistant Federal Public Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: 813-228-2715
Facsimile: 813-228-2562
Attorney for Defendant Fariz

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of February, 2005, a true and correct copy of the foregoing has been furnished by CM/ECF, to Walter Furr, Assistant United States Attorney; Terry Zitek, Assistant United States Attorney; Cherie L. Krigsman, Trial Attorney, U.S. Department of Justice; William Moffitt and Linda Moreno, counsel for Sami Amin Al-Arian; Bruce Howie, counsel for Ghassan Ballut; and to Stephen N. Bernstein, counsel for Sameeh Hammoudeh.

/s/ *Wadie E. Said*
Wadie E. Said
Assistant Federal Public Defender